UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

97-0352

CASE NO. _____

| | |
|---|---|
| UNITED STATES OF AMERICA | 18 USC § 1503 |
| | 18 USC § 401(3) |
| vs. | 18 USC § 371   MAGISTRATE JUDGE |
| | 18 USC § 2       DUBÉ |
| HAROLD BRAXTON and | |
| LEONOR RODRIGUEZ. | |
| _____/ | **I N D I C T M E N T** |

The Grand Jury charges that:

### COUNT 1

**OBSTRUCTION OF JUSTICE
(18 U.S.C. § 1503)**

1. Beginning on or about July 28, 1995, and continuing or about March 29, 1996, in Dade County in the Southern District of Florida, the defendants,

        HAROLD BRAXTON
        and
        LEONOR RODRIGUEZ,

corruptly obstructed and impeded, and endeavored to obstruct and impede the due administration of justice, by violating the lawful orders of the United States District Court for the Southern District of Florida, in the following manner:



## General Allegations

2. On or about July 19, 1995, the United States District Court for the Southern District of Florida issued a Temporary Restraining Order in a civil lawsuit entitled, <u>United States of America v. Rainbow Home Medical Equipment Corporation, 143 Medical Equipment Corporation, formerly known as A Plus Medical Equipment Corporation, Leonor Rodriguez and Manuela De La Fuente</u>, No. 95-1564-Civ-UUB.

3. Based upon the judge's finding that there was probable cause to believe that the defendants were committing Medicare fraud against the United States by submitting fraudulent claims, in violation of 18 U.S.C. § 287, the Temporary Restraining Order prohibited the defendant LEONOR RODRIGUEZ and her attorney from

    a. withdrawing or transferring any money deposited by or held on behalf of LEONOR RODRIGUEZ, 143 Medical Equipment Corporation ("143 Corp."), Rainbow Home Medical Equipment Corporation ("Rainbow Corp."), or A Plus Medical Equipment Corp. ("A Plus Corp.") (collectively referred to as "the Companies"), in any bank account or trust fund; and

    b. taking any action to conceal, transfer or dispose of, in any manner, any asset in which LEONOR RODRIGUEZ or the Companies had acquired an interest after February 1994.

4. By its terms, this court order remained in effect until the close of business on July 31, 1995.

5. On July 31, 1995, the United States District Court for the Southern District of Florida entered a Preliminary Injunction in the same lawsuit. That court order again prohibited the defendant LEONOR RODRIGUEZ and her attorney from

    a. withdrawing or transferring any money deposited by or held on behalf of LEONOR RODRIGUEZ or the Companies in any bank account or trust fund; and

    b. taking any action to conceal, transfer or dispose of, in any manner, any asset in which LEONOR RODRIGUEZ or the Companies had acquired an interest after February 1994.

6. The defendant HAROLD BRAXTON was the attorney for the defendant LEONOR RODRIGUEZ in the federal civil lawsuit described in paragraphs one (1) through five (5) of this Count, as well as during all other times relevant to this Indictment, and was a duly licensed attorney in the State of Florida.

### Specific Allegations

7. The defendants, HAROLD BRAXTON and LEONOR RODRIGUEZ, corruptly committed the following acts in violation of the lawful orders of the United States District Court for the Southern District of Florida, described in paragraphs one (1) through five (5) of this Count, with the purpose and effect of obstructing and impeding the due administration of justice:

    A. **Depositing Frozen Funds**

8. From July 1995 through September 1995, defendant HAROLD BRAXTON deposited into his client trust account a total of

3

approximately $105,749.93 worth of assets in which defendant LEONOR RODRIGUEZ, 143 Corp., Rainbow Corp. and/or A Plus Corp. had acquired an interest after February 1994, as follows:

    i. On or about July 28, 1995, defendant HAROLD BRAXTON deposited into his client trust account eight (8) Medicare checks payable to 143 Corp. and two (2) Medicaid checks payable to 143 Corp. and Rainbow Corp., in the total amount of $89,485.88, all of which had been endorsed by defendant LEONOR RODRIGUEZ.

    ii. On or about August 1, 1995, defendant HAROLD BRAXTON deposited into his client trust account one (1) Medicare check payable to 143 Corp., and two (2) Medicaid checks payable to 143 Corp. and Rainbow Corp., in the total amount of $12,682.11, all of which had been endorsed by defendant LEONOR RODRIGUEZ.

    iii. On or about August 8, 1995, defendant HAROLD BRAXTON deposited into his client trust account one (1) Medicare check payable to 143 Corp. in the amount of $1,107.88, which had been endorsed by defendant LEONOR RODRIGUEZ.

    iv. On or about September 18, 1995, defendant HAROLD BRAXTON deposited into his client trust account eleven (11) checks payable to A Plus Corp. in the total amount of $2,385.48, all of which had been endorsed by defendant LEONOR RODRIGUEZ.

    B. **Payments from Frozen Funds**

9. In August 1995 and September 1995, defendant HAROLD BRAXTON transferred and withdrew a total of $29,588.69 of funds held on behalf of defendant LEONOR RODRIGUEZ in his client trust account, in which funds defendant LEONOR RODRIGUEZ, 143 Corp.

Rainbow Corp. and/or A Plus Corp. had acquired an interest after February 1994, as follows:

    i. On or about August 8, 1995, defendant HAROLD BRAXTON paid $5,000 to defendant LEONOR RODRIGUEZ by check drawn from defendant HAROLD BRAXTON's client trust account.

    ii. On or about August 14, 1995, defendant HAROLD BRAXTON paid $7,122.00 to Purdue University for the tuition of defendant LEONOR RODRIGUEZ's daughter by check drawn from defendant HAROLD BRAXTON's client trust account.

    iii. On or about September 14, 1995, defendant HAROLD BRAXTON paid $6,322.36 to American Express Corporation for defendant LEONOR RODRIGUEZ's account by check drawn from defendant HAROLD BRAXTON's client trust account.

    iv. On or about September 15, 1995, defendant HAROLD BRAXTON paid $5,000 to defendant LEONOR RODRIGUEZ by check drawn from defendant HAROLD BRAXTON's client trust account.

    v. On or about September 25, 1995, defendant HAROLD BRAXTON paid $1,972.33 to First Union Bank for defendant LEONOR RODRIGUEZ's mortgage by check drawn from defendant HAROLD BRAXTON's client trust account.

    vi. On or about October 17, 1995, defendant HAROLD BRAXTON paid $4,172.00 to First Union Bank for defendant LEONOR RODRIGUEZ's mortgage by check drawn from defendant HAROLD BRAXTON's client trust account.

    vii. On or about March 29, 1996, defendant HAROLD BRAXTON paid $5,000 to himself by check drawn from defendant HAROLD

5

BRAXTON's client trust account.

### c. Retaining Frozen Funds For Legal Fees

10. On or about August 8, 1995, defendant HAROLD BRAXTON transferred $50,000 held in his client trust account on behalf of defendant LEONOR RODRIGUEZ, 143 Corp., Rainbow Corp., and/or A Plus Corp., into his law firm's operating account as a "retainer" for legal fees. Defendant LEONOR RODRIGUEZ, 143 Corp., Rainbow Corp., and/or A Plus Corp. had acquired an interest in that $50,000 after February 1994.

All in violation of Title 18, United States Code, Sections 1503 and 2.

## COUNT 2

**CONTEMPT OF COURT**
**(18 U.S.C. § 401)**

1. Paragraphs one (1) through six (6) of Count 1 are hereby realleged and incorporated herein by reference.

2. From on or about July 29, 1995, and continuing to on or about March 29, 1996, in Dade County in the Southern District of Florida, the defendants,

HAROLD BRAXTON
and
LEONOR RODRIGUEZ,

wilfully disobeyed the lawful orders of the United States District Court for the Southern District of Florida issued on July 19, 1995 and July 31, 1995, by transferring assets in which defendant LEONOR RODRIGUEZ, 143 Corp., Rainbow Corp. and/or A Plus Corp. had acquired an interest after February 1994, and by transferring money held on behalf of defendant LEONOR RODRIGUEZ in an account or trust fund, as alleged in Paragraphs eight (8) through ten (10) of Count 1.

All in violation of Title 18, United States Code, Sections 401 and 2.

## COUNT 3

**CONSPIRACY TO DEFRAUD
THE UNITED STATES
OF MEDICARE FUNDS
(18 U.S.C. § 371)**

1. From in or about February 1994, through in or about July 1995, the exact dates being unknown to the Grand Jury, in Dade County in the Southern District of Florida, the defendant

LEONOR RODRIGUEZ,

did knowingly and willfully combine, conspire, confederate and agree with persons known and unknown to the Grand Jury:

(A) to defraud the United States by impeding, impairing and obstructing the function of the Department of Health and Human Services ("HHS"), an agency of the United States, in administering the Medicare program, and

(B) to violate Title 18, United States Code, Section 287 (commonly referred to as "the False Claims Statute") by knowingly and willfully filing and causing to be filed false, fraudulent and fictitious claims with the Medicare program for durable medical equipment.

### The Objects of the Conspiracy

2. It was an object of the conspiracy for the defendant LEONOR RODRIGUEZ and her coconspirators to fraudulently obtain payment from the Medicare program by filing false and fraudulent claims for the provision of durable medical equipment.

3. It was further an object of the conspiracy for the defendant LEONOR RODRIGUEZ to conceal the fact that she and her coconspirators and employees had submitted false and fraudulent

8

claims for durable medical equipment.

## General Allegations

4. From in or about June 1993 until July 1995, defendant LEONOR RODRIGUEZ directed the day-to-day operations of Rainbow Home Medical Corporation ("Rainbow Corp.") and 143 Medical Equipment Corporation ("143 Corp."), formerly known as A Plus Medical Equipment Corporation ("A Plus Corp."). These businesses were incorporated in the State of Florida and their principal place of business was Miami, Florida. In March 1995, A Plus Corp. changed its name from "A Plus Medical Equipment Corporation" to "143 Medical Equipment Corporation."

5. At all times relevant to this Indictment:

A. Defendant LEONOR RODRIGUEZ was a Director, and the Secretary and Registered Agent of Rainbow Corp. Defendant LEONOR RODRIGUEZ was the sole Officer, Director and Registered Agent of 143 Corp. (formerly known as A Plus Corp.).

B. Rainbow Corp. and 143 Corp. were engaged in the business of providing medical equipment to Medicare beneficiaries.

C. "Medicare" was a United States government insurance program which paid for much of the health care costs of eligible persons who were over age 65, or disabled.

D. Medicare was administered by the Health Care Financing Administration ("HCFA"), which was part of HHS, an agency of the United States.

E. Medicare provided two kinds of protection: "Part A" coverage, which paid for hospital and other institutional costs; and "Part B" coverage, which paid for physician services, and

various other medical and health services, including the costs of medication and medical equipment. The Part B program was funded in part by funds provided by the United States. More specifically, the Part B program paid claims for reimbursement submitted by Medicare beneficiaries for 80% of the reasonable charge of durable medical equipment if the equipment was prescribed by a physician and was medically necessary for the health of a Medicare beneficiary.

F. The Part B program also paid claims directly to "providers" of medical equipment when the beneficiaries had assigned their claims to the providers. HHS, through HCFA, administered and supervised the Part B program in Florida. HCFA contracted with Palmetto Government Benefits Administrators (PGBA), for PGBA to receive, process and pay any Part B program claims submitted to it by Medicare beneficiaries or providers.

G. Medicare assigned "provider numbers" to providers. These provider numbers allowed the providers to bill PBGA directly for equipment supplied to eligible Medicare beneficiaries. In order to be paid for medical equipment delivered, providers submitted their claims for payment to PGBA. The claims could be submitted by mail or via computer. Both methods required the provider to submit certain information relating to the Medicare beneficiary, including the type of supplies provided, the price and quantity delivered, and a "certificate of medical necessity" approved by a physician, certifying that the equipment was medically necessary for the health of the Medicare beneficiary.

6. At various times relevant to this Indictment, 143 Corp.

10

(formerly known as A Plus Corp.) and Rainbow Corp. were registered as Medicare providers. In June 1993, A Plus Corp. applied for a Medicare Supplier Number and was assigned supplier number 04046 10001. In March 1994, Rainbow Corp. applied for a Medicare Supplier Number and was assigned supplier number 07585 10001.

### The Manner and Means of the Conspiracy

7. It was part of the conspiracy that Rainbow Corp. and 143 Corp. solicited Medicare-eligible individuals to whom they could provide medical equipment under the false pretense that the equipment was medically necessary for these individuals. The defendant LEONOR RODRIGUEZ and her coconspirators would make or cause to be made cash payments to these individuals in exchange for using their names on claim forms, and to ensure that they would not reveal the scheme in the event of an audit by Medicare or PGBA.

8. It was further a part of the conspiracy that defendant LEONOR RODRIGUEZ and her coconspirators had arrangements with various doctors, who would sign physician certifications authorizing the provision of medical equipment for these beneficiaries, regardless of whether the equipment was medically necessary or whether the beneficiaries were eligible for the equipment under the Medicare program.

9. It was further a part of the conspiracy that defendant LEONOR RODRIGUEZ and her coconspirators would pay cash directly to these doctors in return for their signing fraudulent or completely blank physician certifications.

10. It was further a part of the conspiracy that, in order to generate cash to pay doctors and to pay individuals to act as

11

Medicare beneficiaries, defendant LEONOR RODRIGUEZ and her coconspirators would issue fraudulent payroll checks to individuals. In truth, these individuals were not actual employees of Rainbow Corp. and 143 Corp. Rather, their primary duties were to cash the payroll checks and return significant portions of the amount of the checks to defendand LEONOR RODRIGUEZ, in cash, in exchange for which the individuals would retain a percentage of the amount as a fee.

11. It was further a part of the conspiracy for the defendant LEONOR RODRIGUEZ and her coconspirators to fraudulently obtain payment from the Medicare program by filing false and fraudulent claims for the provision of medical equipment in that the physician certifications accompanying the claims were signed in blank by physicians and were later completed with false and fictitious information by Rainbow Corp. and 143 Corp. personnel who had no contact with the named physicians and no knowledge of the patients' supposed conditions.

12. It was further a part of the conspiracy for the defendant LEONOR RODRIGUEZ and her coconspirators to fraudulently obtain payment from the Medicare program by filing false and fraudulent claims for the provision of medical equipment in that the physician certifications accompanying the claims had been altered and resubmitted to create the appearance of new prescriptions.

13. It was further a part of the conspiracy for the defendant LEONOR RODRIGUEZ and her coconspirators to fraudulently obtain payment from the Medicare program by filing false and fraudulent claims seeking reimbursement for medical equipment which was never

actually provided.

14. It was further a part of the conspiracy that, beginning in or about June 1994, at the direction of Defendant LEONOR RODRIGUEZ, Rainbow Corp. would submit claims to PGBA for durable medical equipment. Rainbow Corp. would represent to PGBA that it had actually provided the equipment, and that the equipment was medically necessary. Rainbow submitted claims for the sum of approximately $1,425,224.01 and was paid approximately $471,418.31 in Medicare funds by PGBA for the period ending June 3, 1995.

15. It was further a part of the conspiracy that, beginning in or about February 1994, at the direction of defendant LEONOR RODRIGUEZ, 143 Corp. would submit claims to PGBA for durable medical equipment. 143 Corp. would represent to PGBA that it had actually provided the equipment, and that the equipment was medically necessary. 143 Corp. submitted claims for the sum of approximately $3,856,076.50 and was paid approximately $1,472,041.83 in Medicare funds by PGBA for the period ending June 3, 1995.

### Overt Acts

16. In furtherance of this conspiracy and in order to achieve its objects, the defendant LEONOR RODRIGUEZ committed or caused to be committed at least one of the following overt acts, among others, in the Southern District of Florida:

A. In or about March 1994, defendant LEONOR RODRIGUEZ completed and mailed a Medicare Supplier Number Application to Medicare requesting a Medicare Supplier Number for Rainbow Corp.

B. In or about May 1994, defendant LEONOR RODRIGUEZ

forged or caused to be forged the certificate of medical necessity prescribing a "nebulizer" and related supplies for a beneficiary ("A.G.") by "whiting out" and then rewriting the dates on a previously issued certificate of medical necessity.

C. On or about June 30, 1994, defendant LEONOR RODRIGUEZ caused A Plus Corp. to pay her $300,000.00 by signing corporate check No. 1730 in that amount.

D. On or about August 19, 1994, defendant LEONOR RODRIGUEZ caused A Plus Corp. to pay her $45,000.00 by signing corporate check No. 1914 in that amount and designating the payment as "dividents."

E. On or about January 11, 1995, defendant LEONOR RODRIGUEZ endorsed and deposited two (2) Medicare checks in the amounts of $9,447.45 and $10,199.33 into the account of Rainbow Corp.

F. On or about March 1, 1995, defendant LEONOR RODRIGUEZ filed corporate documents with the Florida Deparment of State, Division of Corporations, changing the name of A Plus Corp. to "143 Medical Equipment Corporation."

G. In or about March 1995, defendant LEONOR RODRIGUEZ sent a letter notifying the Medicare National Supplier Clearinghouse that A Plus Corp. had changed its name to "143 Medical Equipment Corporation."

H. In or about May of 1995, defendant LEONOR RODRIGUEZ altered or caused to be altered a certificate of medical necessity prescribing a "nebulizer" and related supplies for a beneficiary ("V. E.") by "whiting out" the physician information on the form.

I. On or about July 28, 1995, defendant LEONOR RODRIGUEZ endorsed eight (8) Medicare checks in the total amount of $47,277.98 payable to 143 Corp.

J. On or about August 8, 1995, defendant LEONOR RODRIGUEZ endorsed one (1) Medicare check in the amount of $433.62 payable to 143 Corp.

K. On or about August 8, 1995, defendant LEONOR RODRIGUEZ endorsed one (1) Medicare check in the amount of $1,107.88, payable to 143 Corp.

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL.

_____
FOREPERSON

_____
WILLIAM A. KEEFER
UNITED STATES ATTORNEY

_____
MICHAEL R. TEIN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

HAROLD BRAXTON and
LEONOR RODRIGUEZ

CASE NO. _____

CERTIFICATE OF TRIAL ATTORNEY*

97-0352 CR - MARCUS

Related Case Information:
SUPERSEDING                         Yes ___   No  X
New Defendant(s)                    Yes  X    No ___
Number of New Defendants               2
Total number of counts                 2

MAGISTRATE JUDGE
DUBÉ

**Court Division**: (Select One)

_X_ Miami   ___ Key West
___ FTL     ___ WPB   ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:         (Yes or No) __No__
   List language and/or dialect _____

4. This case will take __6__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                                    (Check only one)

   I    0 to 5 days         ___          Petty      ___
   II   6 to 10 days         X           Minor      ___
   III  11 to 20 days       ___          Misdem.    ___
   IV   21 to 60 days       ___          Felony      X
   V    61 days and over    ___

6. Has this case been previously filed in this District Court? (Yes or No) __No__
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No) __No__
   If yes:

   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____   District of _____

7. This case originated in the U.S. Attorney's office prior to August 16, 1985
   (Yes or No) __No__

                                    _____
                                    MICHAEL R. TEIN
                                    ASSISTANT UNITED STATES ATTORNEY
                                    Florida Bar No. 993522

*Penalty Sheet(s) attached                                    REV. 12/12/96

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

*PENALTY SHEET*

Defendant Name: __HAROLD BRAXTON_____   Case No._____

97-0352  CR-MARCUS

Count #: I    18 USC 1503

*Max Penalty:  Not more than 10 yrs' imprisonment and $250,000.00 fine and $50.00 special assessment and restitution.

Count #: II   18 USC 401

MAGISTRATE JUDGE
DUBÉ

*Max Penalty:  Statute does not prescribe a maximum term of imprisonment or maximum fine; $50.00 special assessment and restitution.

Count #:

*Max Penalty:

FILED by _____ DC
97 MAY -7 PM 3 54
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

Count #:

*Max Penalty:

Count #:

*Max Penalty:

Count #:

*Max. Penalty:

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### _PENALTY SHEET_

Defendant Name: __LEONOR RODRIGUEZ__    Case No. __97-0352-CR-MARCUS__

MAGISTRATE JUDGE
DUBÉ

**Count #: I**    18 USC 1503

**\*Max Penalty:** Not more than 10 yrs' imprisonment and $250,000.00 fine and $50.00 special assessment and restitution.

**Count #: II**    18 USC 401

**\*Max Penalty:** Statute does not prescribe a maximum term of imprisonment or maximum fine; $50.00 special assessment and restitution.

**Count #: III**    18 USC 371

**\*Max Penalty:** Not more than 5 yrs' imprisonment and a $250,000.00 fine and $50.00 special assessment and restitution.

**Count #:**

**\*Max Penalty:**

**Count #:**

**\*Max Penalty:**

**Count #:**

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

(stamp: FILED BY ___ DC, 97 MAY -7 PM 3 54, CARLOS JUENKE, CLERK US DIST. CT., S.D. OF FLA.-MIAMI)

No. 97-0352-Cr-MA

GRAND JURY INDICTMENT NO. EGS 96-cc36

## United States District Court
### FOR THE
Southern DISTRICT OF Florida

MAGISTRATE JUDGE
DUBÉ

UNITED STATES OF AMERICA

vs.

HAROLD BRAXTON and

LEONOR RODRIGUEZ

**AL IN VIOLATION OF:**

18 USC §§ 1503, 401(3), 371, 2

**A TRUE BILL.**

_____
FOREPERSON

Filed _____, 19____

_____ Clerk.

By_____, Deputy.

FORM OBD-4
NOV 82